**Mabel A. KING, Plaintiff,**

v.

**James F. PALMER, Director, District of Columbia Department of Corrections, et al., Defendants.**

**Civ. A. No. 83–1980.**

United States District Court, District of Columbia.

Sept. 10, 1984.

Robert M. Adler, James A. Michaels, Washington, D.C., for plaintiff.

Metcalfe C. King, Asst. Corp. Counsel, Washington, D.C., for defendants.

## MEMORANDUM

GESELL, District Judge.

Mabel A. King, a nurse at the District of Columbia jail, brought this sex discrimination action under Title VII complaining that she was denied a promotion that went to a less qualified female nurse because the other nurse had a sexual relationship with the doctor who promoted her. The Court heard six days of testimony. This Memorandum constitutes the Court's findings of fact and conclusions of law.

In the typical case involving sexual conduct by a supervisor aimed at a subordinate, the plaintiff alleges that she has been the direct target of sexual propositions, suggestive behavior or similar abuse.[1] Such conduct violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, because, but for her gender, a woman would not be subject to such behavior. *Bundy v. Jackson,* 641 F.2d 934, 942–43 (D.C.Cir.1981). This case is superficially different in that the plaintiff has not alleged or shown that she herself was the target of sexual conduct. But the theory of the violation is the same: "sex [was] for no legitimate reason a substantial factor in

---

1. *See, e.g., Katz v. Dole,* 709 F.2d 251 (4th Cir. 1983); *Bundy v. Jackson,* 641 F.2d 934 (D.C.Cir. 1981); *Tomkins v. Public Service Electric & Gas Co.,* 568 F.2d 1044 (3d Cir.1977).

the discrimination." *Bundy v. Jackson,* 641 F.2d at 942. Guidelines published by the Equal Employment Opportunity Commission similarly recognize that

> Where employment opportunities or benefits are granted because of an individual's submission to the employer's sexual advances or requests for sexual favors, the employer may be held liable for unlawful sexual discrimination against other persons who were qualified for but denied employment opportunity or benefit.

29 C.F.R. § 1604.11(g). *Accord, Toscano v. Nimmo,* 570 F.Supp. 1197, 1199 (D.Del. 1983).

With these principles in mind, the Court finds for reasons stated below that plaintiff initially made out a *prima facie* case.

Mabel King became an employee of the medical unit at the D.C. jail in 1975, classified as a clinical nurse, GS–9. She was promoted in 1979 to Supervisory Clinical Nurse, GS–11. In 1981, a new position was established at the jail, Supervisory Forensic/Clinical Nurse, GS–12. King applied for the position along with three other nurses. The job went to Jean Grant, a nurse 20 years younger than King who had worked in the medical unit since 1979 and who had far fewer years of experience as a nurse than King.[2]

The plaintiff introduced evidence that contrary to established procedures Grant was pre-selected for the position by the chief medical officers at the jail, and that there was no genuine consideration of other candidates. Not only were the jail's own regulations for promotions disregarded, but a later attempt was made to cover up this failure to follow the rules.

King also introduced evidence that nurse Grant and Dr. Smith, the chief medical officer, had attended out-of-town medical conventions together,[3] that they occasionally had long lunches together, that Grant repeatedly came and went from work as she pleased in total disregard of her assigned schedule, and that Grant showed a casual physical friendliness with Smith at the office. She showed that the medical unit of the jail was rife with speculation that Grant and Smith were having an affair, that this hurt office morale and that her complaints were disregarded because of the personalities involved. In addition, deposition testimony was presented from a former close boy friend of Grant to the effect she was intimate with Dr. Smith and was prepared to have sex with him if necessary to get the promotion.

This evidence presented on the plaintiff's direct case was sufficient for an inference to be drawn that some kind of sexual relationship between Dr. Smith and Grant was a substantial factor in Grant's promotion. Other elements of a *prima facie* case— that plaintiff was a member of a protected class, that she applied and was qualified for a job for which the employer was seeking applicants, and that she was rejected— also were shown. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

To rebut a *prima facie* case, the defendant need not prove that there was a non-discriminatory reason for the challenged action. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 257–58, 101 S.Ct. 1089, 1095–96, 67 L.Ed.2d 207 (1981). "[T]he employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id.* at 257, 101 S.Ct. at 1095. The plaintiff retains the burden of persuasion, and once the Court has heard the evidence on both sides, it must decide the ultimate question of discrimination based on all the evidence with no presumptions in favor of either side. *United States Postal Service Board of*

---

**2.** No age discrimination claim was brought in the present action, although it was claimed in King's administrative complaint to the District of Columbia Office of Human Rights.

**3.** These were meetings of prison and jail health workers held in conjunction with the annual fall meeting of the American Medical Association in Chicago.

*Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). To meet this burden of persuasion, the plaintiff "may succeed ... either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

Resolution of this case on the merits is hampered by the unreliability of the testimony. The record fails to clarify many uncertainties caused by the obvious bias of most witnesses on either side and inexplicable lapses of memory or records dealing with crucial aspects of the case. The record paints a dismaying picture of a governmental agency rank with petty jealousy, backbiting, lack of proper discipline, disregard for proper promotional practices, and incompetence in high authority.

Defendants offered an explanation and denied the basic sex discrimination claim. Their attempt to establish that Grant was selected because she had superior qualifications must be disregarded. It is unsupported by testimony the Court finds credible and is clearly pretextual. The testimony of the medical doctors responsible for Grant's selection is not worthy of any credence. The selection was made in gross disregard of District of Columbia personnel regulations, no effort was made to investigate the numerous complaints concerning Grant's performance and her frequent disregard of schedule. Other applicants for the position were not interviewed or seriously considered. Indeed the record suggests a deliberate attempt to withhold the underlying facts concerning Grant's qualifications from the Court.[4]

■ Thus the case must be resolved on the specific issue pressed by plaintiff—was Grant's selection to any significant degree the product of sex discrimination. After full consideration the Court is satisfied that the proof as a whole fails to satisfy plaintiff's burden.

There is no direct evidence of an explicit sexual relationship between Grant and Dr. Smith, each of whom vigorously deny it exists or even occurred. Dr. Smith has had a settled family life with wife and children. Grant has lived an active sex life with other men.

Plaintiff argues that even if no sexual relationship occurred, she is entitled to judgment if the evidence shows that some kind of sexual attraction, even if unconsummated, was responsible for Grant's promotion. As authority for this proposition, plaintiff cites case law concerning grooming rules and the like, where it is established that employers may not explicitly apply different indicia of personal attractiveness to burden one gender more than the other. *See, e.g., Gerdom v. Continental Airlines, Inc.,* 692 F.2d 602, 605–06 (9th Cir.1982) (en banc); *Dodge v. Giant Food, Inc.,* 488 F.2d 1333, 1337 (D.C.Cir.1973). Moreover, plaintiff notes that female sexual attractiveness can be a legitimate basis for hiring and promotion criteria only if it can be shown to be a bona fide occupational qualification under 42 U.S.C. § 2000e–2(e).[5] However, these cases do not delineate any standards for dealing with discriminatory claims based on a supervisor's possible personal sexual attraction to an employee.

■ Where a claim of sex discrimination under Title VII is made by a plaintiff contending that one of the same sex was given favored treatment because allegedly the discriminator was sexually attracted to the favored employee, courts must proceed with great caution given the vagaries and infinite manifestations of sexual stimulation. If a sexual relationship is solicited by or given the supervisor and favored treat-

---

4. A potentially key witness, the Administrator for Health Services at the jail, had to be excused after it was shown he had apparently sought to influence the testimony of a colleague who was testifying for plaintiff.

5. That is a difficult burden for the defendant. *See, e.g., Wilson v. Southwest Airlines Co.,* 517 F.Supp. 292, 303 (N.D.Tex.1981). *See generally* 29 C.F.R. § 1604.1 (EEOC guidelines on sex as bona fide occupational qualification).

ment by the supervisor results as the payoff, there is no difficulty. But where, as here, there is no proof of an explicit sexual relationship or indeed of any sexual behavior between the favored employee and the supervisor, difficulties arise. How can a trier of fact determine whether the selection was made for reason of sexual attractiveness as opposed to an individual's nonsexual traits and qualities of personality? There is no answer to this difficult query in this record. Surely when this issue arises, as it does here in the last analysis, given the Court's prior findings set forth above, plaintiff must fairly and squarely meet the issue by positive proof. Cases in this category must not rest on rumor, knowing winks and purient overtones or on inferences allowed in divorce law. Plaintiff offered no positive proof of sexual conduct or sexual attractiveness as between Grant and the doctors who promoted her. She has therefore failed to meet her burden.

Accordingly, the Clerk of Court is directed to enter judgment for the defendants.