**Mabel A. KING, Appellant,**

v.

**James F. PALMER, Director, D.C. Department of Corrections, et al.**

No. 84–5750.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 6, 1985.

Decided Dec. 13, 1985.

As Amended Dec. 31, 1985.

Opinion on Rehearing En Banc Feb. 18, 1986.

Robert M. Adler, with whom David Albert Mustone, Washington, D.C., was on brief, for appellant.

William J. Earl, with whom John H. Suda and Charles L. Reischel, Washington, D.C., were on brief, for appellees.

Janine D. Harris, Washington, D.C., was on brief, for amici curiae, Federally Employed Women's Legal and Educational Fund, et al., urging reversal.

Before WRIGHT and EDWARDS, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge.

Mabel King appeals from a decision of the District Court, granting judgment for the appellees and dismissing her claims of sex discrimination arising under Title VII of the Civil Rights Act of 1964. Specifically, Ms. King contends that she was unlawfully denied a promotion to supervisory forensic/clinical nurse at the District of Columbia Jail. Ms. King asserts that the position in question was awarded instead to a Ms. Norma Jean Grant, who was en-

gaged in an intimate relationship with Dr. Francis Smith, the Chief Medical Officer at the Jail. Appellant also alleges that she was the victim of a discriminatory work environment and that she was subjected to reprisal for filing a complaint with the Equal Employment Opportunity Commission ("EEOC").

The District Court held that Ms. King easily had made out a *prima facie* case of sex discrimination. In particular, the trial court found that Ms. King had demonstrated that the sexual relationship between Dr. Smith and Ms. Grant had been a substantial factor in the promotion decision. In addition, the trial court held that the defendants' attempt to explain the selection of Ms. Grant was *clearly pretextual*. The District Court nonetheless entered judgment for the defendants, holding that Ms. King had not carried her ultimate burden of persuasion because she had failed to offer direct proof that the sexual relationship in question had been consummated.

The District Court's decision rests upon a faulty premise—that a plaintiff must produce *direct* evidence of intentional discrimination to carry the ultimate burden of persuasion. The District Court also erred in suggesting that there could be no finding of discrimination under *Bundy v. Jackson* [1] absent a showing of an explicit (or consummated) sexual relationship. When, as here, the plaintiff successfully makes out a *prima facie* case and discredits the defendants' purported explanation, she has carried her ultimate burden. Her reliance upon some indirect or circumstantial evidence is plainly permissible. Moreover, as the District Court found, there was clearly some direct evidence of *sexual conduct* between Ms. Grant and Dr. Smith that provided sufficient grounds for Ms. King's allegation that sex was a substantial factor in Ms. Grant's promotion; further proof (in the form of actual evidence of a fully consummated sexual relationship) was unnecessary to support Ms. King's claim of discrimination under Title VII.

Because the District Court improperly required Ms. King to produce direct evidence of a consummated sexual relationship between Ms. Grant and Dr. Smith, we reverse and remand this claim for the determination of an appropriate remedy. We also hereby remand the discriminatory work environment and reprisal claims to the District Court for the entry of findings of fact and conclusions of law.

## I. BACKGROUND

Appellant is a registered nurse employed by the D.C. Department of Corrections as a DS–11 level supervisory clinical nurse. In 1981 she applied for a promotion to a new position, supervisory forensic/clinical nurse, DS–12, but the promotion went instead to another nurse, Norma Jean Grant. The trial testimony revealed that Dr. Francis Smith, Chief Medical Officer at the D.C. Jail, with the approval of Dr. Robert Lee, Assistant Director for Health Services, had tried to have Ms. Grant promoted to the position a month before announcing the vacancy in June, 1981. The Department rejected this request because it was required to fill the position competitively. However, even after this instruction, Drs. Smith and Lee did not seriously consider any other candidate because they had preselected Grant for the position. Ms. Grant received the promotion in September, 1981. The District Court found that Ms. Grant had been pre-selected for the position. *King v. Palmer*, 598 F.Supp. 65, 67 (D.D.C. 1984).

Appellant introduced evidence that she had an excellent work record and outstanding credentials and that Ms. Grant had a poor work record and behaved unprofessionally and dishonestly on the job. Appellant also introduced evidence of an intimate relationship between Dr. Smith and Ms. Grant. This evidence included testimony of co-workers that Dr. Smith and Ms. Grant frequently took long lunches together and that their behavior on the job, including physical contact, suggested intimacy between them; testimony that the Administrator of the D.C. Jail, Calvin Scott, had seen Dr. Smith and Ms. Grant kissing outside the work-place; and testimony of Ms. Grant's roommate and boyfriend, Ronald Dock, that Dr. Smith frequently called Ms. Grant at home to discuss nonwork-related topics, that Dr. Smith and Ms. Grant sometimes stayed out together all night long, and that Dr. Smith had wired Ms. Grant and Mr. Dock a substantial sum of money when they were arrested in South Carolina. Co-workers also testified as to the favoritism shown toward Ms. Grant, whose disregard of the work schedule and unprofes-

---

1. 641 F.2d 934 (D.C.Cir.1981).

880

sional behavior were not punished consistent with the policy and practice toward other employees. The District Court found that "no effort was made to investigate the numerous complaints concerning Grant's performance and her frequent disregard of schedule." *Id.* at 68.

The evidence at trial also revealed that Drs. Smith and Lee had attempted to cover up the irregularities with respect to Ms. Grant's promotion. Drs. Smith and Lee had refused to investigate in a meaningful way complaints of favoritism toward Ms. Grant. Dr. Smith attempted at trial to deny any pre-selection, testifying that members of the Oversight Committee had made the selection based on a comparison of the candidates' credentials. A committee member disavowed this version of the events.

Appellant also introduced evidence to demonstrate that the favoritism and unfairness surrounding Ms. Grant's promotion has created a demoralizing and disruptive work environment, and that appellant has been singled out for discriminatory treatment at work since bringing EEO charges.

The appellees suggested that Mr. Dock's testimony was motivated by a desire for revenge against Ms. Grant and Dr. Smith, and noted that the District Court did comment that "[r]esolution of this case on the merits is hampered by the unreliability of the testimony." *Id.* Nonetheless, the trial court held that Ms. King had proven the four elements of her *prima facie* case: first, that she was a member of a protected class; second, that she applied for a job for which she was qualified; third, that she was rejected in favor of another applicant; and fourth, that there was a sexual relationship between Ms. Grant and Dr. Smith that was a substantial factor in Ms. Grant's promotion. *Id.* at 67. With respect to the fourth element, the District Court stated, after summarizing the evidence, that "[t]his evidence presented on the plaintiff's direct case was sufficient for an inference to be drawn that some kind of sexual relationship between Dr. Smith and Grant was a substantial factor in Grant's promotion." *Id.*

With regard to the defendants' rebuttal, the trial court found the testimony of the doctors responsible for promoting Ms. Grant *"not worthy of any credence."* It found their assertions that they had promoted Grant because of her superior qualifications "unsupported by testimony the

Court finds credible" and *"clearly pretextual." Id.* at 68 (emphasis added).

The District Court nonetheless granted judgment in the defendants' favor because Ms. King failed to offer any "direct evidence of an explicit sexual relationship" between Ms. Grant and Dr. Smith and thus, according to the District Court, failed to carry her ultimate burden of persuasion. *Id.* The trial court rejected Ms. King's argument that the sexual conduct that influenced Ms. Grant's promotion, even if unconsummated, should suffice to show a Title VII violation, stating that sexual attractiveness is too difficult to distinguish from non-sexual attractiveness.

II. ANALYSIS

We note at the outset that the parties agree that Ms. King's allegation, based as it is on the sexual relationship between Ms. Grant and Dr. Smith, presents a cognizable cause of action under statutes prohibiting sex discrimination in employment. Appellees do not challenge the District Court's conclusion that this case is within the purview of such statutes. We agree with the District Court's conclusion and its rationale: that unlawful sex discrimination occurs whenever sex is " 'for no legitimate reason a substantial factor in the discrimination.' " *Id.* at 66–67 (quoting *Bundy v. Jackson,* 641 F.2d 934, 942–43 (D.C.Cir. 1981)).

A. *The Promotion Claim*

1. *The Plaintiff's Failure to Produce Direct Evidence*

Appellant contends that the District Court failed properly to apply the principles announced in *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). She points out that the District Court found that she had made out a *prima facie* case, which included proof sufficient to permit the District Court to easily draw an inference that Dr. Smith and Ms. Grant were involved in a sexual relationship that was a substantial factor in the latter's promotion. Ms. King also points out that the trial court found defendants' proffered rationale for promoting Ms. Grant, that she was better qualified, to be "clearly pretextual." 598 F.Supp. at 68. With the case in this pos-

ture, Ms. King argues, the District Court was required under *Burdine* to enter judgment in her favor. We agree.

 *Burdine* makes it absolutely clear that a plaintiff who establishes a *prima facie* case of intentional discrimination and who discredits the defendants' rebuttal should prevail, even if he or she has offered no direct evidence of discrimination.

In *Burdine*, the Supreme Court elaborated on the model of shifting burdens of production set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The burden of establishing the elements of a *prima facie* case by a preponderance of the evidence belongs to the plaintiff. *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093–94. "By establishing a prima facie case, the plaintiff in a Title VII action creates a rebuttable 'presumption that the employer unlawfully discriminated against' [her]. To rebut this presumption, 'the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection.' In other words, the defendant must 'produc[e] evidence that the plaintiff was rejected, or someone was preferred, for a legitimate, nondiscriminatory reason.'" *Aikens*, 460 U.S. at 714, 103 S.Ct. at 1481 (quoting *Burdine*, 450 U.S. at 253–56, 101 S.Ct. at 1093–95). Throughout the case, "plaintiff retains the burden of persuasion" on the ultimate issue of intentional discrimination. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. Following the defendants' nondiscriminatory explanation in rebuttal to the *prima facie* case, the plaintiff

must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or *indirectly by showing that the employer's*

*proffered explanation is unworthy of credence.*

*Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095 (emphasis added); *see also Aikens*, 460 U.S. at 715–16, 103 S.Ct. at 1482–83.

 In this case, the District Court explicitly found that the defendants had not carried their minimal burden of producing an explanation for the allegedly discriminatory conduct. Ms. King had made out a *prima facie* case of intentional discrimination and had shown that the "evidence presented on the plaintiff's direct case was sufficient for an inference to be drawn that some kind of sexual relationship between Dr. Smith and Grant was a substantial factor in Grant's promotion." 598 F.Supp. at 67. Having determined that Ms. King had discredited the defendants' explanation, the trial court was required to grant judgment in her favor. In other words, Ms. King should have prevailed because the defendants never rebutted the "'presumption that the employer unlawfully discriminated against' [her]." *Aikens*, 460 U.S. at 714, 103 S.Ct. at 1481 (quoting *Burdine*, 450 U.S. at 253–54, 101 S.Ct. at 1094). It matters not that the plaintiff's vehicle of proof was indirect, rather than direct evidence. The Court in *Burdine* expressly stated that a plaintiff may carry her ultimate burden *"either* directly ... *or* indirectly," *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095 (emphasis added); that is to say, by direct or indirect evidence.[2]

Thus, the mandate of *Burdine* is clear: a district court may not require direct evidence of intentional discrimination as opposed to indirect evidence that carries the burden of persuasion by discrediting the defendants' rebuttal. Moreover, a district court may not require direct evidence of intentional discrimination as opposed to circumstantial evidence thereof.[3] Insistence upon direct instead of circumstantial evidence would create insurmountable problems of proof for plaintiffs in discrimination cases.[4] The District Court therefore improperly required the plaintiff to produce

---

**2.** In *Krodel v. Young*, 748 F.2d 701 (D.C.Cir. 1984), *cert. denied*, —— U.S. ——, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985), this court reiterated the rationale for this sound approach: "Employees and applicants for employment have great informational disadvantages: they cannot reach into the minds of decision-makers, and therefore they usually can gather only circumstantial evidence of discriminatory motives." *Id.* at 707 (quoting

*Cuddy v. Carmen*, 694 F.2d 853, 859 (D.C.Cir. 1982)).

**3.** *See Aikens*, 460 U.S. at 714 n. 3, 103 S.Ct. at 1481 n. 3 (Title VII plaintiff may prove case by direct or circumstantial evidence).

**4.** *See id.* at 716, 103 S.Ct. at 1482 ("eyewitness" testimony rarely available as to employer's motivation in making allegedly discriminatory employment decision).

direct evidence of sex discrimination in this case.[5]

## 2. The Plaintiff's Failure to Produce Evidence That The Sexual Relationship Was Consummated

■ The District Court also erred in its conclusion that plaintiff's case failed because there was no direct proof of "an *explicit* sexual relationship between Grant and Dr. Smith." This is a curious statement because there was no dearth of direct evidence of a sexual relationship between Ms. Grant and Dr. Smith, and the trial court specifically found that Ms. King had demonstrated that the *sexual relationship* had been a substantial factor in the promotion decision. Therefore, the District Court could not have meant to suggest otherwise in its statement that "there was no direct evidence of an *explicit* sexual relationship."[6] Apparently, by resort to the notion of an *"explicit* sexual relationship," the District Court meant to suggest that there was no direct proof that the sexual relationship between Dr. Smith and Ms. Grant had been consummated. In so doing, the District Court seemingly attempted to draw an inexplicable distinction between sexual intercourse and other (arguably lesser) forms of sexual conduct. Such a distinction finds no support in the governing case law and we can discern no good reason to carve out such an exception in this case.

We cannot even imagine how a court could begin to make qualitative distinctions between different forms of sexual encounters. A requirement of proof of intercourse might have the advantage of any "bright line" test, but it would establish a patently absurd legal principle. We therefore refuse to require a plaintiff who has provided clear evidence of sexual conduct to do more and demonstrate directly that the relationship has been consummated. Here the District Court found that there was direct evidence of a sexual relationship, *i.e.,* kisses, embraces and other amorous behavior, which concededly played a substantial role in Ms. Grant's selection for promotion. This was more than enough to satisfy plaintiff's burden of proof on this point.

This case does not invoke the hypothetical, and arguably more difficult, situation posed by the District Court in which a plaintiff has shown only that the candidate selected for promotion was "attractive" to the selecting officials. Here there is direct evidence of sexual conduct in a proven relationship between a selecting official and the employee selected for promotion. And, most importantly, the evidence establishes that Ms. Grant was promoted *because* of that sexual relationship. Had the trial court found that Ms. Grant was promoted for some reason other than, or entirely apart from, the sexual relationship, then this might have been a different case. But appellees' explanations here were found to be "clearly pretextual."

In view of the foregoing, we reverse the District Court's holding regarding the promotion and remand the matter to the District Court to enter judgment for Ms. King and to determine an appropriate remedy.[7]

---

5. Appellees attempt to defend the District Court's decision by arguing that the trial court *implicitly* found that, although their proffered reason for promoting Ms. Grant instead of Ms. King was "clearly pretextual," their evidence on other points fatally undermined Ms. King's *prima facie* case. This is a wholly untenable construction of the District Court's opinion. Nowhere in the trial court's opinion do we discern a finding such as that which appellees argue is implicit. We rely instead on the District Court's express finding that Ms. King had established all the elements of a *prima facie* case of intentional discrimination. Therein, given the District Court's formulation of the *prima facie* case, she necessarily established by a preponderance of the evidence that a sexual relationship existed between Ms. Grant and Dr. Smith that influenced the promotion decision. And, as the District Court found, appellees' defense was "unsupported by testimony the court finds credible" and was "clearly pretextual."

6. If the District Court meant to make a factual finding that there was no direct evidence of a sexual relationship between Dr. Smith and Ms. Grant, we would reverse such a determination as "clearly erroneous." *Pullman-Standard v. Swint,* 456 U.S. 273, 287–88, 102 S.Ct. 1781, 1789–90, 72 L.Ed.2d 66 (1982). However, we believe that there is no real issue on this point because the District Court found a sexual relationship between Dr. Smith and Ms. Grant, albeit not an explicit (or consummated) one.

7. At a minimum, it appears that the appropriate remedy in this case should include the promotion of Ms. King to the position in question, her receipt of backpay, and a full consideration of any further relief. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975) ("[t]he court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past...."); *Bundy v. Jackson,* 641 F.2d at 948–53; *Nord v.*

## B. The Work Environment and Reprisal Claims

Ms. King also alleged in her complaint and maintained during her trial that she was the victim of a discriminatory work environment and of reprisals for having filed a complaint with the EEOC. The District Court has yet to enter findings of fact or conclusions of law on these allegations. We therefore remand these matters to the District Court for further consideration and entry of appropriate findings, conclusions and judgment.

*Reversed and remanded.*

### On Rehearing En Banc

Before: ROBINSON, Chief Judge; WRIGHT, WALD, MIKVA, EDWARDS, GINSBURG, BORK, SCALIA, STARR, SILBERMAN and BUCKLEY, Circuit Judges; McGOWAN, Senior Circuit Judge.

### ORDER *

Per Curiam.

The suggestion for rehearing *en banc* of appellees has been circulated to the full Court and no member has requested the taking of a vote thereon. Upon consideration of the foregoing, it is

ORDERED, by the Court, that the suggestion is denied.

### ORDER

PER CURIAM.

Upon consideration of the motion of the United States for an extension of time within which to file a brief as *amicus curiae* regarding rehearing *en banc*, it is

ORDERED, by the Court *en banc*, that the motion is denied.

BORK, Circuit Judge, with whom Circuit Judges GINSBURG, SCALIA, STARR, SILBERMAN and BUCKLEY join:

In voting to deny the suggestion of rehearing *en banc* and the motion of the United States for an extension of time within which to file a brief as *amicus curi-*

*United States Steel Corp.,* 758 F.2d 1462, 1472 (11th Cir.1985).

*ae* regarding rehearing, we noted the concern of the United States that the panel decision "may represent a significant expansion of Title VII coverage." The United States wished time to consider whether to file a brief addressing the question whether Title VII affords a claim for relief for sex-based discrimination to a woman who alleges that she was denied a promotion in favor of another woman who had a sexual relationship with their supervisor. Rehearing of that issue *en banc* would be inappropriate because no party challenged that application of Title VII on appeal, and the issue was not briefed or argued to the panel. Indeed, the losing parties' petition for rehearing and suggestion of rehearing *en banc* again did not raise that issue. Because the point was *not* before the panel on appeal, there is no occasion to address the issue *en banc*.

---

* Chief Judge Robinson did not participate in this order.