**William A. BLACKWELL, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF the TREASURY, Defendant.**

**Civ. A. No. 85–2097.**

United States District Court,
District of Columbia.

Sept. 19, 1986.

---

David J. Ontell, for plaintiff; Arthur B. Spitzer, ACLU Fund of the Nat. Capital Area, Washington, D.C., of counsel.

Gena E. Cadieux, Judith F. Ledbetter and Janet C. Hudson, Attys., Dept. of Justice, Civil Div., Washington, D.C., for defendant.

## MEMORANDUM

GESELL, District Judge.

Plaintiff sues under the Rehabilitation Act, 29 U.S.C. §§ 701–796, alleging discrimination based on the failure of the Department of the Treasury to hire him because he is a transvestite. There has been a full bench trial and the Court makes the following findings of fact and conclusions of law which are to be considered as supplemented by the Court's previous Memorandum and Order of May 27, 1986 disposing of defendant's motion to dismiss. *See Black-well v. United States Department of the Treasury*, 639 F.Supp. 289 (D.D.C.1986).

Plaintiff established a *prima facie* case by his own testimony. It is undisputed that after about ten years of satisfactory performance in other branches of the Treasury Department he was riffed in February, 1982, and was later advised of a GS–2 clerical position available at the Bureau of Public Debt for which he could apply under the Treasury's program assuring him priority consideration for reemployment. The job entailed copying bond numbers into a ledger and involved no contact with the public. Plaintiff is a literate high school graduate.

He applied for the job by interview on May 6, 1982. At that time he wore pants of a feminine style, a broad stretch belt, a shirt-blouse, and his hair was in long braids. He was recommended for employment by the Unit Supervisor after the first interview. She believed he was a homosexual and when asked by plaintiff whether there was objection to his life-style, said no.

He was then passed for further interview to the second-level supervisor after the first-level supervisor, who was otherwise engaged, suggested this be done. The second interviewer, Mr. Strange, talked with plaintiff for ten or fifteen minutes, gave no indication plaintiff was unqualified in any way and advised him he "would be in touch."

Within a matter of hours after the interview by oral instruction Mr. Strange cancelled the vacancy without even discussing his decision with the Unit Supervisor, who had recommended plaintiff be hired. He gave no reason at the time except that he was going to fill the vacancy at GS–3. Plaintiff was not qualified for a GS–3 position.

▪ Plaintiff established that he is and was at the time a transvestite. He cross-dresses in female clothing, has had foam implanted in his breasts, and has effected other changes in his physical appearance. Since the interview his female dress and adornments have become more pronounced. His speech is slightly effeminate.

Thus plaintiff showed that he is probably a member of a protected class, that he applied for a job, that he was qualified and that the job requirements were changed to avoid hiring.

The principal defense presented hinges on the testimony of Mr. Strange. Treasury points out that plaintiff did not tell Mr. Strange he was a transvestite and that Mr. Strange testified that his action in cancelling the vacancy was not in any way influenced by plaintiff's "life-style" as Mr. Strange observed it. Plaintiff's condition does not appear from his personnel records and the Court finds he did not reveal to Mr. Strange that he was a transvestite.

Mr. Strange further testified that he had been confronted with several priority applications for the GS–2 vacancies at the Bureau of the Public Debt, that he had found one (not plaintiff) unsatisfactory, that he hoped to get better qualified applications at GS–3 and presumably could get them on probationary status, unlike the GS–2 riffed priority hires who would have immediate status. Logical as all this seems, the Court finds this testimony sheer rationalization and does not accept it. Mr. Strange professes no recollection of the interview. He recalls only plaintiff's hair and a remark by one of his associates who said she couldn't stand it. It seems far more likely that Mr. Strange would have discussed his shift to GS–3 with his experienced, competent Unit Supervisor—who had recommended plaintiff be hired—if that were the real reason he refused to support his staff.

In the Court's view, and the Court so finds, Mr. Strange found plaintiff's apparent homosexual aspect undesirable and changed the rules to avoid the inevitable administrative hassle that would occur if he declined a qualified applicant who was carrying priority hiring credentials because of the RIF.

■ There is nothing to suggest that Mr. Strange had any understanding one way or the other as to the difference between a homosexual and a transvestite or that he focused on the fact that plaintiff's dress was somewhat more feminine than that of many homosexuals. To make matters more difficult, some transvestites are homosexuals. Yet, as a matter of statutory analysis, while homosexuals are not handicapped it is clear that transvestites are, because many experience strong social rejection in the work place as a result of their mental ailment made blatantly apparent by their cross-dressing life-style.

The Treasury offers a justification for failure to hire which is not supported by the proof as a whole. The failure to hire plaintiff was not the administrative decision suggested. Mr. Strange knew plaintiff could do the job and had no sound basis for even refusing to accept him for the job. Since the Court rejects this reason as pretextual, the question arises whether or not plaintiff is entitled to any relief.

■ The Court of Appeals has held in a sex discrimination case that once a *prima facie* case has been established, as it was in this instance, plaintiff must prevail if the reason for the discriminatory action is pretextual, even though at trial another, possibly nonactionable "justification" was shown which could explain the decision as nondiscriminatory. *King v. Palmer*, 778 F.2d 878 (D.C.Cir.1985). Thus there may be a basis in the record to hold that since Mr. Strange rejected plaintiff because he believed he was a homosexual (a condition not protected under the Rehabilitation Act), and not because he was a transvestite (a protected condition), plaintiff should nonetheless recover because defendant's explanation is pretextual.

But here, unlike *King v. Palmer*, there is another aspect. Plaintiff's handicap was not automatically apparent as is gender. In these circumstances one claiming under the Rehabilitation Act has a duty to inform a prospective employer of his handicap before being entitled to relief under that Act. Plaintiff did not do this, preferring to refer simply to his "life-style," which was clearly ambiguous. Thus while the failure to employ plaintiff is highly reprehensible, plaintiff cannot recover and the complaint must be dismissed. Hopefully wiser heads will correct the underlying injustice.

The Clerk of Court shall enter judgment for defendant.