Plaintiff-appellant, Nancy J. Asp, appeals from a judgment of the Franklin County Court of Common Pleas granting partial summary judgment for defendant-appellee, Ohio Medical Transportation, Inc., d/b/a MedFlight ("MedFlight"). Appellee MedFlight has cross-appealed from the trial court's decision denying summary judgment on appellant's remaining claim.
For purposes of this appeal from summary judgment, some facts are uncontroverted. Appellant Nancy Asp is a nurse with approximately twenty-one years of experience. For the past eighteen years, she worked in the field of trauma, or emergency nursing. She has worked in the emergency rooms of Grant Medical Center and Mount Carmel East Hospital in Columbus. In approximately 1987, appellant became employed by SkyMed, a helicopter-based emergency response service developed by a consortium consisting of the Ohio State University Hospitals, Columbus Children's Hospital, and Mount Carmel Hospitals. Appellant was one of the first flight nurses hired by SkyMed, and continued with the firm until SkyMed merged in April 1995 with another flight-based emergency response service known as LifeFlight. The merger resulted in the creation of MedFlight, the appellee in the present case.
During this period of employment, appellant continued her professional development beyond her prior RN diploma, receiving a bachelors degree in nursing and eventually a masters degree in June 1997. Appellant maintained professional certifications in Advanced Cardiac Life Support ("ACLS") and Basic Trauma Life Support ("BTLS"), and was a certified flight registered nurse ("CRFN") and emergency medical technician ("EMT"). Appellant also taught ACLS and BTLS courses.
Approximately one year after the 1995 merger which created MedFlight, appellant was promoted to a newly created position of "Team Leader." This position required appellant to retain her flight nurse duties, as well as additional supervision of the twenty-two members on her team. Appellant held one of four team leadership positions created under this system by MedFlight.
Rod Crane became president of MedFlight upon its inception in 1995. As the organization was then structured, a single chief flight nurse reported directly to the president. Soon thereafter, Crane eliminated the chief flight nurse position and replaced it with the position of Director of Operations. For this position Crane hired Andy Arthurs, a paramedic who had helped Crane prepare a business plan after the merger. At approximately the same time, Crane created another new position, titled Education Coordinator, at the outset, a half-time position. The position was given to Mary Lou Garey, a flight nurse who retained some of her prior duties while filling the Education Coordinator position on a half-time basis. Mary Lou Garey and Andy Arthurs, the new Director of Operations for MedFlight, had a long-standing romantic involvement, a fact of which Crane, appellant, and many other MedFlight personnel were aware.
After a few months, Garey expressed some unhappiness about the interaction between her flight nurse and Educational Coordinator duties, and indicated to Crane that she wished to return to being a full-time flight nurse. At approximately the same time, Crane decided to make the Education Coordinator position a full-time one, and posted a job description to invite internal applications. Garey indicated, at least initially, that she was unwilling to take the Education Coordinator position on a full-time basis. In response to the posting, four employees of MedFlight expressed interest, including appellant, another employee seeking the position on a full-time basis, and a "joint proposal" by Garey and another employee, Robert Moore, offering to split the Education Coordinator position. Eventually Crane selected Moore and Garey's split job proposal over appellant's application for the full-time position. Crane's deposition indicates that this decision was made based upon Moore's EMT background and his good relationship with other firefighters and emergency medical services in the community. Crane also expressed confidence in Garey's prior performance record and ability to continue in the job since she had regained interest in it. Crane also conceded that appellant better met the education requirements of the posted job description, including progress towards her masters degree.
Appellant, when informed by Crane of his decision to accept Garey and Moore's joint proposal, expressed her dissatisfaction and her belief that Garey, in particular, had been awarded the position because of her personal relationship with Arthurs. After a meeting with Arthurs to discuss the situation, appellant resigned her position with the company, expressing the belief that she had lost the support and confidence of Crane and Arthurs, with whom she previously felt she had a positive working relationship.
Appellant then filed the present action against MedFlight alleging employment discrimination in violation of R.C. 4112.02
and 4112.99, intentional infliction of emotional distress arising from the alleged employment discrimination, and a further count of sex discrimination in violation of the "established public policy of the state of Ohio." All the causes of action were based upon the alleged preferential hiring of Moore and Garey in the Educational Coordinator position. The complaint sought compensatory and punitive damages on these claims.
Following the completion of discovery, appellee filed a motion for summary judgment based upon the depositions, affidavits, and documentary evidence in the record. The trial court rendered a decision granting in part and denying in part appellee's motion for summary judgment. The trial court found initially that appellant had not been discharged, actually or constructively, from her employment, and thus the only adverse job action to which she could point would be the MedFlight's failure to hire her for the Education Coordinator position. With respect to this alleged discriminatory action, the trial court noted that appellant's allegation of favorable gender-based treatment with respect to Garey was based upon a claim of "sexual favoritism," which is not recognized as sex discrimination in Ohio. The trial court further found that appellant had not presented evidence of either a hostile work environment or of quid pro quo sexual harassment. The trial court concluded that appellant had not established a prima facie case with respect to the alleged preferential hiring of Garey, and that summary judgment was therefore appropriate for MedFlight on all claims related to Garey's hiring.
The trial court also found that summary judgment was appropriate on appellant's claim for intentional infliction of emotional distress. The court found there remained no material issue of fact on this claim since there was no evidence that appellant had suffered sufficient emotional distress or that appellee's conduct which might have given rise to appellant's distress, rose to the level of "extreme or outrageous conduct" satisfying the elements of this tort.
The trial court also granted summary judgment on appellant's claim that she was discharged in violation of the public policy of the state of Ohio. Based upon its conclusion that appellant had been neither constructively nor actually discharged, the trial court found that there remained no material issue of fact as to this claim.
The trial court declined to grant summary judgment, however, on appellant's statutory sex discrimination claim based upon the alleged preferential hiring of Moore, a man, to fill part of the Educational Coordinator position. The trial court found that appellant had established a prima facie case of gender discrimination, and that there remained a material issue of fact as to whether the legitimate, nondiscriminatory reasons for the hiring, advanced by appellee to rebut appellant's prima facie case, were valid or merely pretextual.
With respect to appellant's claim for punitive damages, the court found that appellant had not submitted evidence showing the requisite malice on the part of appellee, and that punitive damages were thus not awardable. The sum of the trial court's judgment in this matter, therefore, was that only appellant's statutory employment discrimination action could proceed, and of that, only the aspect of such claim that was based upon the preferential hiring of Moore. The trial court additionally decided that no punitive damages would be awarded on that claim if it succeeded. All other claims advanced in appellee's complaint were subject to summary judgment in favor of appellee.
Appellant has timely appealed and brings the following assignments of error:
 FIRST ASSIGNMENT OF ERROR: The Court of Common Pleas erred when it granted summary judgment for Appellee on Appellant's claim of sex discrimination with respect to the sexual favoritism of May [sic] Lou Garey.
 SECOND ASSIGNMENT OF ERROR: The Court of Common Pleas erred when it granted summary judgment for Appellee on Appellant's claim of constructive discharge.
 THIRD ASSIGNMENT OF ERROR: The Court of Common Pleas erred when it granted summary judgment for Appellee on Appellant's public policy claim.
 FOURTH ASSIGNMENT OF ERROR: The Court of Common Pleas erred when it granted summary judgment for Appellee on Appellant's claim for punitive damages.
Appellee has cross-appealed from the trial court's failure to grant summary judgment on appellant's surviving claim and brings the following assignment of error:
 THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR BY DENYING CROSS APPELLANT'S MOTION FOR SUMMARY JUDGMENT ON APPELLANT'S CLAIM FOR SEX DISCRIMINATION BECAUSE IT [THE TRIAL COURT] IMPROPERLY FOUND THAT REASONABLE MINDS COULD DIFFER AS TO WHETHER CROSS APPELLANT'S ARTICULATED, LEGITIMATE NONDISCRIMINATORY REASONS FOR NOT CHOOSING APPELLANT TO FILL THE POSITION OF EDUCATION COORDINATOR WERE PRETEXT [sic].
Appellees' cross-assignment of error requires only brief discussion and will be addressed first. It is well-established in Ohio that a judgment denying a motion for summary judgment does not constitute a final appealable order, except for limited statutory exceptions, none of which are applicable here. Celebrezze v. Netzley (1990), 51 Ohio St.3d 89; State exrel. Overmeyer v. Walinski (1966), 8 Ohio St.2d 23; Lelux v.Chernick (1997), 119 Ohio App.3d 6. In the absence of a final appealable order, we are without jurisdiction to entertain appellant's cross-appeal, which is accordingly dismissed.
We will now address appellant's assignments of error. Initially we note that this matter was decided on summary judgment. The standard of review in this case is well-established. Pursuant to Civ.R. 56(C), a motion for summary judgment shall be granted if no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and the evidence, viewed in a light most favorable to the nonmoving party, establishes that reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. Davis v. Loopco Industries, Inc. (1993), 66 Ohio St.3d 64. Upon appeal, we will independently review the pleadings and evidentiary material submitted to the trial court and apply the same standard to determine whether the materials submitted in support of, and opposition to, summary judgment establish a genuine issue of material fact. In reviewing the grant of summary judgment, an appellate court reviews the judgment independently and does not defer to the trial court. MidwestSpecialties, Inc. v. Firestone Tire Rubber Co. (1988),42 Ohio App.3d 6.
The bulk of appellant's claim, even where not brought directly under the statute, hinges upon the application of R.C.4112.02, governing unlawful discrimination in the workplace:
It shall be an unlawful discriminatory practice:
 (A) For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.
The Supreme Court of Ohio has held that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112."Plumbers Steamfitters Comm. v. Ohio Civil Rights Comm.
(1981), 66 Ohio St.2d 192, 196. The body of federal and state case law interpreting the comparable federal anti-discrimination statutes thus provides the model for addressing discrimination suits brought under Ohio's anti-discrimination statute. The test applied is that laid out by the United States Supreme Court in McDonnell Douglas Corp.v. Green (1973), 411 U.S. 792, 802-805. As set forth inMcDonnell Douglas, and later modified in St. Mary's HonorCenter v. Hicks (1993), 509 U.S. 502, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of unlawful employment discrimination. In a sex discrimination case, the plaintiff must show that she was a member of a protected class, that she was discharged or suffered an adverse job action, and that a comparable unprotected employee was differently treated. If the plaintiff is able to establish such a prima facie case of discrimination, then the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its conduct. If the employer can articulate such a nondiscriminatory reason, than the presumption of discrimination raised by the prima facie case is rebutted, and the burden shifts back to the plaintiff to prove that the stated reason for the employer's action was merely pretextual, and that discrimination was the true cause for the adverse job action or other conduct.
Appellant alleges that she was discriminated against on the basis of her gender for two reasons: first, an allegedly less qualified male was chosen for the position for which appellant applied, and second, another female employee, also allegedly less qualified, was selected over appellant on the basis of a romantic relationship with her supervisor. Since the trial court did not grant summary judgment on appellant's claims with respect to Moore, the issue in this appeal is whether a sex discrimination claim can arise out of the selection of Garey, another female employee, who was awarded the position sought by appellant. Since Garey, like appellant, is a person who belongs to the protected class, the usual prima facie case of discrimination cannot be shown here. Appellant, rather, seeks to support her claim on the more unusual theory of "sexual favoritism," not heretofore recognized in Ohio. This claim is based upon Garey's relationship with Arthurs.
Appellant cites several federal cases in support of this proposition. In Toscano v. Nimmo (D.Del., 1983),570 F. Supp. 1197, the court found that a prima facie case could be made on facts nearly identical to the ones before us. The court held that "[w]here employment opportunities or benefits are granted because of an individual's submission to the employer's sexual advances or request for sexual favors, the employer may be held liable for unlawful sex discrimination against other persons who are qualified for but denied that employment opportunity or benefit." Id. at 1199, quoting 29 C.F.R. section 1604.11(g). (Emphasis added.) We note that the court so held despite the fact that it specifically found that the relationship in question was purely consensual, which seems somewhat at odds with the implication of coercion in the above-quoted regulatory language.
The appellant also cites King v. Palmer (C.A.D.C. 1985),778 F.2d 878, in which the plaintiff contended that she was unlawfully denied a promotion to a supervisory position when the promotion was awarded to another woman involved in an intimate relationship with the supervisor making the decision. The D.C. Circuit held that "unlawful sex discrimination occurs whenever sex is 'for no legitimate reason a substantial factor in the discrimination.' " Id. at 880. See, also, Priest v.Rotary (N.D.Cal. 1986), 634 F. Supp. 571, 581. ("Title VII is also violated when an employer affords preferential treatment to female employees who submit to his sexual advances or other conduct of a sexual nature, or when, by his conduct or statements, implies that job benefits will be conditioned on an employee's good-natured endurance of a sexually charged conduct or sexual advances."
The cases cited by appellant demonstrate that employment discrimination law, as with any body of law, cannot be taken as immutable, but will often be adapted by the courts to address new variations of the basic social ills which the law is intended to address. As such, we are of course not constrained to a strict disregard of any new theories of recovery pursuant to R.C. 4112.02. Nonetheless, the theory of sexual favoritism which appellant would have us adopt clearly represents a radical departure from the current state of Ohio law, and would require us to take a step, the consequences of which might well have wide repercussions throughout the field of employment law. The facts of the present case do not justify such a step. In any event, the amending of R.C. 4112.02 is the business of the legislature, and not this court.
As we noted above, cases adopting the sexual favoritism theory typically do so in the context of a hostile, abusive, or at least sexually charged work environment. Facts in such cases typically involve a supervisor who brings sexual conduct into the work place with one or more subordinates, and establishes a pervasive, pernicious pattern of sexual coercion which leaves non-consenting subordinates in a precarious situation for continued employment or advancement. Such is not the case here. The relationship between Garey and Arthurs commenced several years prior to the events complained of here, and although the relationship was widely known throughout the organization, it was not pervasively reflected in the professional relationship between Garey and Arthurs. Other than the bare fact of appellant's non-promotion to the position she desired, the evidence before the trial court did not establish a pattern of inherently discriminatory conduct constituting a hostile work environment or an atmosphere of quid pro quo sexual harassment." A co-worker's romantic involvement with a supervisor does not by itself create a hostile work environment." Candelore v. Clark Cty. Sanitation District
(C.A.9, 1992), 975 F.2d 588, 590. "The prohibition of harassment on the basis of sex requires asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter 'conditions' of the victim's employment." Oncale v. Sundowner Offshore Svcs., Inc. (1998), U.S. 118 S.Ct. 998, 1003. On the present facts, appellant having failed to establish the traditional prima facie case for employment discrimination by demonstrating that she was replaced by a person not of a protected class, we decline to accept appellant's invitation to create a right of recovery in Ohio for "sexual favoritism" under R.C. 4112.02, and thus overrule appellant's first assignment of error.
Appellant's second assignment of error asserts that the trial court erred in ruling that appellant was not constructively discharged from her employment with MedFlight, based upon her denial of the promotion she sought. In Ohio, the test for determining whether an employee has been constructively discharged is whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign. Mauzy v.Kelly Services., Inc. (1996), 75 Ohio St.3d 578. Appellant's position is that she had no choice but to quit or submit to having her career dictated by individuals on the basis of unlawful and discriminatory considerations. We agree with the trial court that there was insufficient evidence, as a matter of law, to sustain a claim of constructive discharge in the present case. In her deposition, appellant described the day of her departure as follows: "I got my coat and my portfolio and gathered up my other belongings and deposited the narcotic keys and the narcotics and the pager on [Andy Arthurs'] office desk and said that I didn't care for the direction the company was going and 'I'm out of here.' " (Depo., 162.) However, appellant also testified that she had a strong working relationship with both Crane and Arthurs in the past, and continued to believe that she would have their support and confidence. Moreover, appellant has presented no authority for the proposition that denial of a promotion, merited or not, would of itself create such intolerable working conditions that a reasonable person would feel compelled to resign. One can conceive of circumstances under which this might be the case; appellant, however, has presented no evidence that continued employment at MedFlight, absent promotion, would put her in an intolerable position, or that her personal career progression was irreparably impaired by the denied promotion, such that she was forced to leave the company entirely. We therefore find that the trial court did not err in concluding there remained no material issue of fact on the issue of constructive termination. Appellant's second assignment of error is accordingly overruled.
Appellant's third assignment of error asserts that the trial court should have found that her constructive discharge violated the public policy of the state of Ohio. Since we have concluded above that appellant was not constructively discharged, we agree with the trial court that this precludes finding for appellant on her claim for violation of public policy. Collins v. Rizkana (1995), 73 Ohio St.3d 65, 69.
Finally, we address appellant's fourth assignment of error, which asserts that the trial court erred in finding that appellant's punitive damages claim was subject to summary judgment. Since we have found that the trial court did not err in granting summary judgment on the above-addressed discrimination claims, the punitive damage issue is moot as to those claims. With respect to the sole surviving discrimination claim, based upon the promotion of Moore, we agree with the trial court's conclusion that summary judgment was appropriate on the punitive damages issue. Under Ohio law, punitive damages are awardable in R.C. 4112.02 discrimination action upon a finding of actual malice. Rice v. Certain Teed Corp. (1999),84 Ohio St.3d 417. "Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Preston v. Murty (1987), 32 Ohio St.3d 334, syllabus.
The facts in this case, as outlined above, do not present sufficient evidence upon which reasonable minds could differ regarding any such conduct on the part of MedFlight. We agree with the trial court that reasonable minds could not conclude that MedFlight acted maliciously in choosing Moore for the promotion over appellant. Appellant's fourth assignment of error is therefore overruled.
In summary, appellant's first, second, third, and fourth assignments of error are overruled. Appellee's cross-appeal is dismissed. The matter is remanded to the trial court for further proceedings on appellant's claims which survive summary judgment.
Judgment affirmed
BOWMAN and KENNEDY, JJ., concur.