**Harold WEISBERG, Appellant,**

**v.**

**U.S. DEPARTMENT OF JUSTICE.**

No. 87–5304.

United States Court of Appeals, District of Columbia Circuit.

Argued April 14, 1988.

Decided May 27, 1988.

Scott R. McIntosh, Atty., Dept. of Justice, with whom James M. Spears, Acting Asst. Atty. Gen., Jay B. Stephens, U.S. Atty. and Leonard Schaitman, Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellee.

Before WALD, Chief Judge and ROBINSON and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

This long-lived FOIA case has returned once more following a remand to the District Court. The case (and now the appeal) was brought by Harold Weisberg, an individual who has been engaged in litigation with the Department of Justice for thirteen years. Pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (1982), Mr. Weisberg has requested and received from the Federal Bureau of Investigation and the Department of Justice over 60,000 documents relating to the Government's investigation of the assassination of Dr. Martin Luther King, Jr.

This iteration of the lengthy litigation concerns what eligibility, if any, Mr. Weisberg has for attorney's fees incurred in the course of litigating the second of his two separate FOIA requests. The District Court ruled that Weisberg did not "substantially prevail" in the litigation with respect to his second request, and therefore failed to qualify for reimbursement under the Act's fee-shifting provision. The District Court also reduced the number of hours for which Weisberg's attorney could be compensated under his first FOIA request (with respect to which the parties now agree Weisberg substantially prevailed), and refused to enhance the fee award. Weisberg appeals from these adverse determinations.

I

Having elsewhere related the complicated background of this litigation, we will refrain from doing so here. *See Weisberg v. Department of Justice,* 745 F.2d 1476

James H. Lesar, Washington, D.C., for appellant.

(D.C.Cir.1984) (*Weisberg II*).[1] We will, however, canvass the essentials.

On April 15, 1975, Weisberg submitted a limited FOIA request for FBI documents connected to its investigation of Dr. King's murder. Unsatisfied with the Bureau's progress in providing the requested information, Weisberg filed suit on November 23, 1975 seeking compliance with his request. One month later, Weisberg filed an additional—and very broad—administrative request for further information bearing on Dr. King's murder. The second request sought virtually all information in the FBI's files pertaining to the investigation. The next day, without waiting the statutory (ten-day) period, *see* 5 U.S.C. § 552(a)(6)(A)(i), Weisberg amended his complaint to include (anticipated) non-disclosure under his second administrative request. The administrative processing of Weisberg's second request was thus concurrent with litigation over that request.

Within approximately two years, the Department provided Weisberg over 60,000 documents pursuant to both requests. Weisberg was nonetheless dissatisfied, contending that the Department's search of its files was inadequate in several respects. The District Court granted summary judgment in favor of the Department, holding that DOJ had adequately complied with Weisberg's search request, and that its claimed exemptions for excising portions of certain documents were in order.

At the same time, however, the District Court granted Weisberg's motion for summary judgment as to whether he had substantially prevailed in the litigation. Accordingly, the court awarded Weisberg some $100,000 in fees and costs. The trial court viewed the litigation over Weisberg's first and second requests jointly, and held that Weisberg had substantially prevailed by virtue of the enormous volume of documents he had secured.

On appeal, we affirmed Judge Green's judgment with respect to the adequacy of the Department's search and its claimed exemptions.[2] *Weisberg II,* 745 F.2d 1476 (D.C.Cir.1984). On the subject of attorney's fees, however, we vacated and remanded to the District Court. We instructed the court to reevaluate whether Weisberg had substantially prevailed, noting that his two FOIA requests were to be viewed separately. If the trial court determined that compensation was warranted on one or both requests, we instructed the court to calculate fees so as to give credit only for hours spent litigating successfully; if the court determined that Weisberg substantially prevailed on only one of his two requests, then only those hours devoted to litigating the successful request were to be compensable.

On remand, the District Court concluded that Weisberg substantially prevailed on his first request, but not on his second. *See Weisberg v. U.S. Department of Justice,* Civ. No. 75–1996 (D.D.C. May 23, 1987), *reprinted in* Joint Appendix (J.A.) at 239 (hereinafter cited as "Opinion"). Determining that Weisberg otherwise met the standards for qualifying for a fees award, the court awarded compensation for his first request in the amount of $23,000.[3] With respect to the second request, the court viewed Weisberg's success in obtaining documents as attributable in the main to the Government's *administrative* processing of the request. On the few matters as to which Weisberg succeeded in getting court orders, the court discounted the documents received as duplicative of previously released documents, or as too insignificant to justify a holding that Weisberg substantially prevailed on his *overall* second request. *See Weisberg II,* 745 F.2d

---

**1.** *Weisberg II,* which was our most recent treatment of this litigation, was preceded by yet a different appeal dealing with issues relating to Weisberg's entitlement to certain photographs under his first request. *See Weisberg v. Department of Justice,* 631 F.2d 824 (D.C.Cir.1980).

**2.** We also upheld the court's determination that Weisberg and the Department had not entered

into a legally binding consultancy agreement, under which Weisberg would assist the Department in the task of responding to his FOIA requests.

**3.** The Government does not appeal the fee award on Weisberg's first request, and informs us that Weisberg's counsel has received the $23,-000 the District Court determined he was due.

at 1497 (instructing the District Court to evaluate whether "appellant substantially prevailed as to his *overall* request").

The court therefore denied fees for time spent litigating the second request. The court also reduced the hours for which Weisberg's counsel was to be compensated for the first request, as time either spent on the second request or spent unproductively. In addition, the court declined to increase counsel's hourly rate to compensate him either for delay in receiving his fees or for the risk of contingency in this type of case. This appeal followed.

## II

Like so many modern statutes, FOIA contains a fee-shifting mechanism. To restate briefly what is now highly familiar, FOIA authorizes a district court to "assess against the United States reasonable attorney fees ... in any case ... in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). To be eligible for a fee award, an applicant must demonstrate (1) that he or she "substantially prevailed" in the litigation, and (2) that he or she is *entitled* to fees under a separate inquiry not relevant to this case. *See Weisberg II,* 745 F.2d at 1495; *Church of Scientology of California v. Harris,* 653 F.2d 584 (D.C. Cir.1981). If an applicant is entitled to fees, the court multiplies the number of hours expended on the successful litigation and the attorney's hourly rate to determine the amount of the award.

The determination of whether a party substantially prevailed (in the absence of a final judgment in his or her favor) is "largely a question of causation." *Weisberg II,* 745 F.2d at 1496. A party seeking to establish his or her eligibility for fees "must show that prosecution of the action could reasonably be regarded as necessary to obtain the information ... and that a causal nexus exists between that action and the agency's surrender of that information...." *Cox v. Department of Justice,* 601 F.2d 1, 6 (D.C.Cir.1979). It is clear, however, that "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish

causation." *Weisberg II,* 745 F.2d at 1496 (citing *Crooker v. Department of the Treasury,* 663 F.2d 140, 141 (D.C.Cir.1980).

The standard of review on appeal is equally well-established. The question of whether a litigant substantially prevailed is one of fact. A district court's resolution of that question will therefore be reversed only if it is clearly erroneous. *See* Fed.R. Civ.Pro. 52(a); *Cox v. Department of Justice,* 601 F.2d at 6; *Crooker v. Department of the Treasury,* 663 F.2d at 142.

## III

Weisberg argues that his success in several aspects of the litigation over his second request demonstrates that he substantially prevailed. Aside from a broad argument that litigation was necessary to secure any response at all (an argument which we will treat later), Weisberg concentrates on several discrete series of events in seeking to establish his eligibility for fees.

## A

█ *Complete Copying Fee Waiver.* After initially granting a 40 percent reduction in the fees customarily charged for photocopying requested documents, the Department switched course and granted Weisberg a complete waiver for the more than 60,000 documents that were eventually produced pursuant to the two requests. The Department declined initially to waive copying fees, and Weisberg repaired to court to free himself from the considerable financial burdens of obtaining the voluminous materials he had requested. The Department opposed Weisberg's motion, arguing that he was not entitled to a waiver. While this controversy was pending, Weisberg won a similar motion in separate FOIA litigation (over his request for documents concerning the assassination of President Kennedy.) *See Weisberg v. Bell,* No. 77–2155 (D.D.C. Jan. 16, 1978) (Gesell, J.). By March 1978, Weisberg was pressing the court in the present case for an order similar to the one he received from Judge Gesell in *Weisberg v. Bell.* In the

course of that effort, Judge Green issued an order for the Department to explain within eight days its refusal to grant the waiver. *See* Opinion and Order (March 3, 1978), *reprinted in* Addendum 1 to Reply Brief for Appellant.

The Department subsequently granted Weisberg a full waiver from fees. Weisberg contends, not surprisingly, that his success in obtaining the waiver demonstrates that he substantially prevailed in his second request. The copying fees for 60,000 documents would, of course, add up to a tidy sum.[4] Weisberg contends, not without force, that this success was significant in terms of his overall FOIA request, and that without court action the waiver would not have been forthcoming. Indeed, as Weisberg rightly emphasizes, the Department had settled upon a 40 percent reduction and had mounted firm opposition to granting a complete waiver. In these circumstances, Weisberg concludes, the Department's change of position can reasonably be attributed to no cause other than the litigation itself.

Unfortunately for Weisberg, the Department has a ready rejoinder to this point, a rejoinder which the District Court adopted. As it did below, the Department contends that the decision ultimately to grant the complete waiver was an administrative one, entirely unrelated to *this* litigation. That the Department's change of position was prompted by another (unrelated) litigation loss is, in the Department's view, irrelevant to this case.

To set the stage for this discussion, we briefly turn to the other FOIA litigation. The Government did not appeal the loss in *Weisberg v. Bell.* According to the Department, this decision signalled a shift in administrative policy. According to a 1978 affidavit by Quinlan Shea, who served as Director of the Department's Office of Privacy and Information, the loss in *Weisberg v. Bell* occasioned a rethinking of the Department's waiver policy with respect to Weisberg on all fronts. With the decision not to appeal in *Weisberg v. Bell*, it became clear that no reason existed to deny Weis-

berg a full waiver for all his FOIA requests. *See* Affidavit of Quinlan J. Shea, filed March 23, 1978 (Record Document 60).

The Shea affidavit, the Department argues, severs any apparent causal connection between litigation in this case and the decision to grant the full waiver. In the Department's view, *the Shea affidavit demonstrates that had there been no motion at all in the instant case, the complete waiver would nonetheless have been granted.* The District Court agreed with this assessment, specifically concluding that the waiver was "based on an *administrative* decision of the agency and not a lawsuit." Opinion, J.A. at 253. In the District Court's view, the Department as an administrative matter reconsidered its position, and determined that no legal ground existed on which to oppose the fee waiver.

We readily agree that the complete waiver of copying fees appears at first blush to have been the product of Weisberg's litigation efforts. After all, the Department formally opposed his motion for a waiver. This would ordinarily suggest that, once the Department acquiesced, the strength of the opposition's litigation position was the cause of the Government's change of position. But the District Court found, as a factual matter, that the Department succeeded in breaking the apparent causal chain. There is evidence in the record to support this determination, namely the Shea affidavit; under these circumstances, we are constrained to conclude that the shield of the clearly-erroneous rule protects the trial court's finding. Notwithstanding the intuitive appeal of Weisberg's argument, we cannot in conscience come to the view that Judge Green's decision in this respect falls under the daunting standard of Rule 52.

**B**

■ *Field Office Records, 6500 Abstracts, and the Long Tickler.* Weisberg contends that his obtaining certain other records, after the Department resisted his

---

**4.** The fee waiver covered all documents Weisberg received under both requests.

efforts to secure the documents, suffices to establish that he substantially prevailed on the second FOIA request. The documents Weisberg features are (1) various files located in FBI field offices across the country ("the field office records"); (2) 6500 abstracts of the Department's overall MURKIN files (an FBI abbreviation for the King assassination investigation), which serve essentially as an index to the files; and (3) the so-called "Long tickler," a file maintained by an FBI agent which contains duplicates of many documents located at FBI headquarters, but which Weisberg contends is a "political file" containing significant documents not available in the MURKIN files.

(1) *Field Office Records.* On the subject of the field office records, Weisberg argues that the FBI produced files located in various FBI field offices around the country *only* after the Department denied the files' existence (or for those files known to exist, their relevance). What is more, Weisberg points out, the field office files were produced pursuant to a stipulation governing what the Department would produce and when it would do so. A stipulation entered into by the parties during this litigation, he contends, is analogous to a settlement, under which he would be viewed as having substantially prevailed.

The Department argues in response that the stipulation was simply the result of efforts to clarify the scope of Weisberg's mammoth second request and to simplify the Department's administrative efforts to comply with that request. Moreover, the argument goes, the Department delayed only because of the belief that, in general, field office files were duplicative of those situated at FBI headquarters. But once the scope of Weisberg's request became clear through the stipulation, and the existence of non-duplicative field office files was confirmed, the Department proceeded to produce the documents without significant delay.

In our view, the stipulation, like the complete fee waiver, seems troubling at first. But, again, we are unpersuaded that the District Court's adoption of the Depart-

ment's explanation can fairly be condemned as clearly erroneous. There is evidence in the record, primarily the deposition of John Hartingh (an FBI special agent involved both in processing the second request and crafting the stipulation), to support Judge Green's adoption of the Government's explanation. *See* Deposition of John Hartingh, December 6–7, 1979.

In his deposition, Special Agent Hartingh stated that the Department was mystified as to the scope of Weisberg's second request. The Department felt that it was impractical to undertake the enormous task of searching the files of all FBI field offices nationwide; thus, some guidance from Weisberg himself was necessary to help narrow the daunting scope of the search. Inasmuch as the parties were in litigation, and in order to bind the Department to follow exactly the procedures Weisberg desired, the vehicle of a stipulation was chosen. At bottom, the Department contends, the stipulation was entered into not as a result of litigation, but to accomplish the administrative task of complying with the extraordinarily broad second request. *See* Brief for Appellee at 23–25.

The District Court agreed that the causal nexus for the stipulation was best traced to the Department's *administrative* processing of the second request. *See* Opinion, J.A. at 251. Because credible evidence in the record supports the District Court's determination, we uphold it as not clearly erroneous.

■ (2) *6500 Abstracts.* The abstracts of the FBI's MURKIN files were initially produced pursuant to court order. After the abstracts were disclosed, however, the court denied Weisberg's motion to compel production of those materials. The court held that the documents were "essentially duplicative of information already released" and "reveal[ed] less information than the documents plaintiff [had already] received." Order (Dec. 1, 1981) at 3. Thus, in evaluating the impact of disclosure of the abstracts on whether Weisberg substantially prevailed, the court determined that the abstracts were not significant in

terms of the overall FOIA request, and that the "plaintiff's alleged success as to these abstracts is an illusory one." Opinion, J.A. at 251–252. As the Department points out, the possibility that the abstracts may simplify the task of reviewing the voluminous documents in the MURKIN files does not outweigh, for purposes of determining whether Weisberg substantially prevailed on his overall FOIA request, the fact that the information contained in them is entirely duplicative of documents already produced. *See* Brief for Appellee at 21. There is no basis for overturning the District Court's conclusion in this respect.

(3) *Long Tickler.* Weisberg contends that the Department was deceptive and uncooperative in dealing with his request to produce the Long tickler file. The Department maintained that it was unable initially to locate the file. Weisberg contested the veracity of this representation before the District Court, and renews his allegations of untruthfulness and bad faith on appeal. But the District Court did not question that the Department in fact could not find the file; Judge Green noted that once "a joint effort by both the DOJ and plaintiff to search for this file" proved fruitful (largely by virtue of aid provided by Weisberg himself), the Long tickler was promptly disclosed. *See* Opinion, J.A. at 252. In short, the court did not ascribe to the Department the dark motives suspected by Weisberg, and thus viewed the disclosure of the Long tickler as unrelated to whether Weisberg substantially prevailed in the litigation over his second request. Again, we can discern no basis on which to question this conclusion.

## C

Weisberg's next argument is a global one. By virtue of the unique circumstances of this case—two requests resulting in the production of over 60,000 documents, few of which were disclosed quickly or without controversy—Weisberg maintains that litigation was necessary in order to get *any* production from the Department. In Weisberg's view, the very existence of litigation over the second request was the *only* reason the Department's administrative process worked with any efficiency. Since, as Weisberg sees it, the entire litigation was necessary in order to obtain any documents, Weisberg should be viewed as having substantially prevailed. We cannot agree.

Even granting that unnecessary, lengthy delays occurred in the processing of *both* requests, there is no basis for saying that litigation was necessary to compel the production of any documents at all. In *Weisberg II*, we observed that no small part of the delay in this case was occasioned by Weisberg's own litigation tactics. *See* 745 F.2d at 1489 n. 21. Moreover, Weisberg has not shown that the Department delayed unnecessarily in the administrative processing of his *second* request. Indeed, such a showing would, we believe, be nigh unto impossible because Weisberg amended his original complaint to include the second request *immediately* after filing the request with the Department. Normally, the rate of document production before and after filing a complaint is probative as to whether litigation had a significant effect on an agency's response. *See* Brief for Appellee at 26 n. 12. By his own conduct, Weisberg has foreclosed any such inquiry in this case. We are therefore left with no reasonable choice but to conclude that a foundation is lacking for Weisberg's global claim.

## IV

The final matters in controversy concern the District Court's treatment of the fee award to which Weisberg's counsel is entitled for his success in litigation over his client's first request. The court reduced the number of hours for which counsel was to be compensated as either time spent unproductively or time devoted to litigating the second request (as to which the court determined no fees were due since Weisberg did not substantially prevail). The court also declined to increase the hourly rate customarily charged by Weisberg's attorney, either to compensate him for the

delay in receiving his fees or for the risk in taking the case on a contingency basis.

 Weisberg quibbles with the District Court's judgment on the compensability of time spent on several matters. What he fails sufficiently to appreciate, however, is the daunting standard for reversing these determinations on appeal. The District Court's judgment as to the appropriateness of time spent on litigation is reviewable on appeal only for an abuse of discretion. *See Copeland v. Marshall*, 641 F.2d 880, 901 (D.C.Cir.1980) (en banc). The reason is, of course, easy to discern; the trial judge, after all, "closely monitors the litigation on a day-to-day basis." *Id.* Under *Copeland's* standard, none of Weisberg's allegations of error approaches the point of reversibility. The District Court applied the appropriate standards for determining whether time is compensable and properly exercised its discretion in reducing the number of compensable hours in specific areas.

 Next, Weisberg contends that the court erred in not granting a fee enhancement to compensate counsel for the delay in receiving his fees. This claim, however, is foreclosed by the Supreme Court's decision in *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). *Shaw* held that, in the absence of explicit statutory authorization, principles of sovereign immunity prevent awards of interest (which are legally and economically indistinguishable from compensation for delay) against the United States. Because FOIA's fee-shifting provision does not authorize compensation for delay, *see* 5 U.S.C. § 552(a)(4)(E), *Shaw* disposes of Weisberg's claim in this particular.

 Finally, Weisberg alleges that the District Court erred in refusing to enhance his counsel's hourly rate as compensation for the risk in a contingency fee arrangement. The Supreme Court has recently held that contingency enhancements, while typically unavailable, may on occasion be appropriate. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, — U.S. —, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*"Delaware Valley II"*).

As we had occasion to note in *Thompson v. Kennickell*, 836 F.2d 616 (D.C.Cir.1988), Justice O'Connor's concurring opinion in *Delaware Valley II* effectively sets the standards for determining whether, in a particular case, a contingency enhancement is permissible. *See Delaware Valley II*, 107 S.Ct. at 3089 (O'Connor, J., concurring in part and concurring in the judgment). The test fashioned in Justice O'Connor's separate opinion requires a fee applicant to meet two separate standards. First, the applicant must establish "that without an adjustment for risk the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market.' " *Id.* at 3090–91. Second, the applicant must establish that the market rate of compensation for contingent fee cases *as a class* is different from cases in which compensation is certain, win or lose. *See id.* at 3089–90.

In our *Thompson* decision, we characterized Justice O'Connor's test as "stringent." Expressing substantial doubt as to whether the *Thompson* plaintiffs could meet the strictures of that test, we nonetheless remanded for the District Court to consider the matter in the first instance. *See* 836 F.2d at 621. Our reason for doing so was that *Delaware Valley II* was decided in the interval between the District Court's decision and our consideration of the case.

Both in his reply brief and in a supplemental submission, Weisberg emphasizes that *Delaware Valley II* was handed down after the District Court's decision in this case, and that, as in *Thompson*, "neither the district court nor the parties were aware of Justice O'Connor's formulation." *Thompson*, 836 F.2d at 621. Weisberg thus requests the same treatment afforded the *Thompson* plaintiffs, namely a remand. In contrast, the Department argues that the possibility that Weisberg will be able to come within the stringent standards of *Delaware Valley II* is considerably more remote than was the case in *Thompson*. Accordingly, we are urged to decide as a matter of law that Weisberg is not entitled to a fee enhancement.

The Department's skepticism is not without force, but we are nonetheless satisfied that the matter ultimately depends on factual determinations that are not ours to make. We lack a sufficient record to decide either whether the private market compensates attorneys in contingent fee cases differently as a class, or whether Weisberg would have been unable to obtain counsel without a contingency enhancement. Accordingly, we remand to the District Court for further proceedings, as appropriate, and resolution of this narrow remaining issue.

## V

The bulk of litigation over Weisberg's second FOIA request concerned the adequacy of the Department's search for requested documents and the appropriateness of the Department's claimed exemptions. In *Weisberg II*, we decided those issues in favor of the Department. On remand, Weisberg attempted to demonstrate that his other successes were enough to establish that he substantially prevailed. The District Court rejected Weisberg's claims, stating that he "may have won a battle or two but he lost the war." Opinion, J.A. at 253. Upon reflection, we agree. We affirm in the main, but remand for consideration of whether Weisberg's counsel is entitled to a contingency enhancement on the fees awarded by virtue of his success in litigating the first FOIA request.

*It is so ordered.*